IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

FILED
JAMES BONINI
CLERK
04 MAY 12 PM 1:08
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| CITIZENS AGAINST POLLUTION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. C2 04 371 |
| ) | |
| AMERICAN ELECTRIC POWER CO., INC., ) | |
| ) | JUDGE FROST |
| Defendant. ) | |
| ) | MAGISTRATE JUDGE ABEL |

## COMPLAINT

### Introduction

1. This is a citizen suit brought under section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), to require defendant American Electric Power Company, Inc. ("AEP") to take all actions necessary to eliminate the imminent and substantial endangerment to health and the environment stemming from sulfuric acid aerosol releases from its General James M. Gavin Power Plant ("the Gavin Plant") in Cheshire, Ohio. This is also a citizen suit brought under section 310(d)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9659(d)(1), and section 326(d)(1) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11046(d)(1), for AEP's repeated failures (1) to report the Gavin Plant's releases of reportable quantities of sulfuric acid, which is classified as a hazardous substance under those statutes; and (2) to notify potentially injured parties in the affected area by newspaper publication of those releases. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and an award of costs, including attorneys' and expert witness'

fees, for these violations.

## Jurisdiction and Venue

2. This Court has jurisdiction of the subject matter of this action under 42 U.S.C. §§ 6972(a)(1)(B), 9659(d)(1), and 11046(d)(1), and 28 U.S.C. § 1331.

3. Venue is proper in this District pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because it is the "district in which . . . the alleged endangerment may occur." Venue is also proper in this District pursuant to section 310(b)(1) of CERCLA, 42 U.S.C. § 9659(b)(1), and section 326(b)(1) of EPCRA, 42 U.S.C. § 11046(b)(1), because the source of the violations is located within, and the violations occurred within, this District.

## Notice

4. On June 25, 2003, plaintiff gave notice of the violations and its intent to file suit to the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), the Regional Administrator of EPA Region 5, the Ohio Environmental Protection Agency ("Ohio EPA"), the U.S. Attorney General, the Ohio Attorney General, and AEP, as required by section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), section 310(d)(1) of CERCLA, 42 U.S.C. § 9659(d)(1), and section 326(d)(1) of EPCRA, 42 U.S.C. § 11046(d)(1).

5. More than 90 days have passed since the notices were given and neither U.S. EPA nor Ohio EPA has commenced and is diligently prosecuting a civil or criminal action to redress the violations. In addition, U.S. EPA has not taken any of the actions described in section 7002(b)(2)(B)(i)-(iv) of RCRA, 42 U.S.C. § 6972(b)(2)(B)(i)-(iv), and Ohio EPA has not taken any of the actions described in section 7002(b)(2)(C)(i)-(iii) of RCRA, 42 U.S.C. § 6972(b)(2)(C)(i)-(iii).

**Parties**

6. Plaintiff Citizens Against Pollution (CAP) is a non-profit corporation organized under the laws of the State of Ohio. CAP's purpose is, inter alia, to seek increased awareness of pollution sources in the Cheshire, Ohio area where CAP's members live and increased enforcement and regulation of pollution from those sources. CAP has approximately 82 members who live in and near Cheshire, Ohio.

7. CAP's members reside, own property, breathe the air, drive and use areas near the Gavin Plant. They use and enjoy the benefits of unobstructed visibility and clean air in these areas. The Gavin Plant has emitted sulfuric acid aerosol that degrade these natural resources and cause these members to suffer impaired breathing, burning eyes, sore throats and white-colored sores on their lips and inside their mouths.

8. For example, Paul and April Stinson are CAP members who live and own a residence on Roush Lane near the Gavin Plant. They have seen plumes of pollution emitted from the Gavin Plant come onto their property, have personally been exposed directly to these plumes, and have suffered the health effects described above.

9. Defendant AEP is a corporation organized under the laws of the State of New York. AEP owns and operates the Gavin Plant located at 7397 State Route 7 in Cheshire, Ohio. The Gavin Plant is a coal-fired electricity generating facility with two 1300-megawatt units, Units 1 and 2. The Gavin Plant has two 830-foot high stacks–one for each unit–that emit byproducts of the coal-burning process.

**Facts**

10. In May 2001, the Gavin Plant installed two selective catalytic reduction (SCR)

systems—one on Unit 1 and one on Unit 2—to reduce nitrogen oxide ($NO_x$) emissions.

11. Operation of the SCRs increased formation of sulfur trioxide. Sulfur trioxide is converted to sulfuric acid prior to leaving the Gavin Plant through its stacks. Sulfuric acid is emitted in the form of an aerosol or liquid mist. This aerosol or mist increases the visibility of the plume, which may appear blue.

12. Since at least May 2001, the Gavin Plant has released blue plumes of sulfuric acid aerosol that have touched down in Cheshire and in areas near the plant. Plume touchdowns have occurred episodically and intermittently from May 2001 to the present, including, but not limited to, the following dates: July 2-3, 2001, July 16, 2001, August 3, 2001, September 1, 2001, September 22, 2001, September 30, 2001, October 2001 (16 days), November 3, 2001, November 4, 2001, November 21, 2001, March 6, 2002, September 29, 2002, May 5, 2003, and August 1, 2003.

13. In February 2002, in response to complaints from Cheshire residents, the Agency for Toxic Substances and Disease Registry issued a Health Consultation that found that:

> [E]pisodic elevations of sulfur dioxide and sulfuric acid levels in and around Cheshire pose a public health hazard to some residents, particularly residents with asthma. While levels appear to not be life-threatening, pollutant levels have been high enough to cause bronchoconstriction and increased airway resistance.

14. On July 6, 2001, AEP notified the National Response Center of a statistically significant increase in continuous releases of sulfuric acid aerosol from the Gavin Plant.

15. In an August 2, 2001 letter to the U.S. EPA, AEP filed a similar notification. AEP reported that continuous releases of sulfuric acid aerosol had increased from a range of zero to 10,969 pounds per 24-hour period to a range of zero to 64,213 pounds per 24-hour period. The letter further stated that:

4

The upper values of this range are only expected to be reached during the five-month ozone season when pollution control technology is in use.

... The change in the range for releases of sulfuric acid was calculated based on test data collected after the recent installation and commencement of operation of selective catalytic reduction (SCR) technology at the facility to reduce Nox emissions from coal combustion during the ozone season (May 1 through September 30 of each calendar year). The SCR was initially placed in operation on May 1, 2001 and has been going through testing and initial shakedown. The SCR will be operated only during the ozone season. During the balance of the year, releases will be similar to the previously reported range and will be well within the upper bound of the new range for ozone season operations.

The sulfuric acid aerosol release is routine, anticipated, intermittent and incidental to normal operations. Based on these characteristics, it is eligible for continuous release reporting. Actual releases will vary with seasonal operation of the SCR, actual hours of operation, fuel quality and other factors, but the release quantity will remain within the newly established range (0 to 64,213 pounds).

16. Since the SCR began operating, releases of sulfuric acid aerosol from the Gavin Plant have not been stable in quantity or rate. For example, in an August 9, 2001 letter to EPA, AEP stated:

We have been managing the operation of the plant with the goal of preventing any contribution from Gavin to the blue haze conditions that are causing community concerns. Toward that end, we are monitoring weather information and investigating a number of options on a real time basis, including, but not limited to, burning blends of lower sulfur coal, altering catalyst operations, injecting alkali compounds, and altering air heater operations. We have been interrupting the operation of the SCRs and utilizing low sulfur coal blends as conditions warrant.

17. AEP has not run the SCRs continuously. AEP ran the SCR on Unit 1 in 2001, but not in 2002 or 2003. AEP has run the SCR on Unit 2 in all three of those years.

18. The SCRs are designed to operate only during the summer ozone season, which is from May 1 through September 30 of each year.

19. Since at least March 2002, AEP has measured the concentration of sulfuric acid in its Unit 2 stack over 100 times. The measurements show that the levels of sulfuric acid have

ranged between 4 parts per million (ppm) and 37 ppm. For example, the levels varied between 7 and 37 ppm on June 3, 2002 and between 9 and 20 ppm on July 10, 2002.

20. In the summer and fall 2001, AEP tested several techniques to reduce concentrations of sulfur trioxide in the exhaust gas. In 2002 and 2003, AEP injected magnesium hydroxide slurry, water, and dry calcium hydroxide into the exhaust gas from Unit 2.

21. In a June 1, 2002 report to EPA, AEP stated that it could effectively mitigate sulfur trioxide formation by switching to lower sulfur coal or by installing a wet electrostatic precipitation (ESP) system. However, AEP rejected those two alternatives as too expensive.

## Claims

### Count One

22. AEP is a "person" within the meaning of section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

23. Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), provides that citizens may commence a citizen suit against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

24. Sulfuric acid aerosol contains liquid material resulting from industrial operations, and therefore is a solid waste under section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

25. AEP has contributed and/or is contributing to the past and present handling, treatment, and/or disposal of a solid waste which may present an imminent and substantial

6

endangerment to health and/or the environment within the meaning of section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

**Count Two**

26. AEP is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

27. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and its implementing regulations, 40 C.F.R. § 302.6(a), provide that any person in charge of an onshore facility shall, as soon as he has knowledge of any release of a hazardous substance from such facility in a quantity equal to or exceeding the reportable quantity determined by EPA in any 24-hour period, immediately notify the National Response Center of such release.

28. Citizens may commence a citizen suit against facilities that fail to report these releases, and may seek applicable civil penalties and injunctive relief. 42 U.S.C. § 9659(a)(1) and (c). The applicable civil penalty for a violation of section 103(a) is up to $27,500 per day for each day during which the violation continues. 42 U.S.C. § 9609(c)(1); 40 C.F.R. § 19.4.

29. The Gavin Plant is an onshore facility within the meaning of section 101(18) of CERCLA, 42 U.S.C. § 9601(18).

30. Sulfuric acid is a designated hazardous substance under CERCLA with a threshold reporting amount of 1000 pounds per day. 40 C.F.R. § 302.4.

31. Since May 2001, including on the dates listed in paragraph 12 above, the Gavin Plant has released more than 1000 pounds per day of sulfuric acid, but has not submitted daily release reports to the National Response Center, in violation of CERCLA.

32. Instead, AEP has sought to fit into an exception for reduced reporting when the

7

releases from the Gavin Plant are "continuous" and "stable in quantity and rate." 42 U.S.C. § 9603(f)(2); 40 C.F.R. § 302.8. The Gavin Plant's emissions of sulfuric acid do not qualify for this exception.

33. AEP's violations of section 103 of CERCLA are continuing and/or intermittent.

34. AEP's violations of the reporting requirements of CERCLA have been numerous and repeated. Because of this extensive history of reporting violations, plaintiff believes and alleges that, without the imposition of appropriate civil penalties and issuance of an injunction, AEP will continue to violate CERCLA's reporting requirements in section 103.

35. AEP is subject to an injunction ordering it to cease its violations of CERCLA's reporting requirements in section 103.

36. As a result of these violations, CAP's members have been unable to determine the quantities of sulfuric acid to which they may have been exposed.

### Count Three

37. Section 304(a)(1) of EPCRA, 42 U.S.C. § 11004(a)(1), provides that if a release of an extremely hazardous substance listed under section 302(a) of EPCRA, 42 U.S.C. § 11002(a), occurs from a facility at which a hazardous substance is produced, used or stored, and such release requires a notification under section 103(a) of CERCLA, 42 U.S.C. § 9603(a), the owner or operator of the facility shall immediately provide notice as described in section 304(b) of EPCRA, 42 U.S.C. § 11004(b).

38. Notices required by section 304(b) of EPCRA must be sent to the applicable local emergency planning committee and the state emergency planning commission. 42 U.S.C. § 11004; 40 C.F.R. § 355.40. For releases from the Gavin Plant, those releases must be sent to the

8

Gallia County Emergency Planning Committee and the Ohio State Emergency Response Commission.

39. Section 304(c) of EPCRA, 42 U.S.C. § 11004(c), provides that, if a release requires notice under section 304(a) of EPCRA, 42 U.S.C. 11004(a), then the owner or operator shall as soon as practicable provide a written followup emergency notice as described in section 304(c).

40. Citizens may file a citizen suit against the owner or operator of a facility for failure to submit a followup emergency notice under section 304(c), and may seek applicable civil penalties and injunctive relief. 42 U.S.C. § 11046(a)(1)(A)(i) and (c). The applicable civil penalty for a violation of section 304(c) is up to $27,500 per day for each day during which the violation continues. 42 U.S.C. § 11045(b)(3); 40 C.F.R. § 19.4.

41. The Gavin Plant is a facility within the meaning of Section 329(4) of EPCRA, 42 U.S.C. § 11049(4).

42. Sulfuric acid is a designated extremely hazardous substance under EPCRA with a threshold reporting quantity of 1000 pounds per day. 40 C.F.R. Part 355, App. A.

43. Since May 2001, including on the dates listed in paragraph 12 above, the Gavin Plant has released more than the threshold reporting quantity of 1000 pounds per day of sulfuric acid, but has not submitted required release reports or written emergency followup reports to the Gallia County Local Emergency Planning Committee or Ohio's State Emergency Response Commission, in violation of EPCRA.

44. AEP's violations of section 304 of EPCRA are continuing and/or intermittent.

45. AEP's violations of the reporting requirements of EPCRA have been numerous

and repeated. Because of this extensive history of reporting violations, plaintiff believes and alleges that, without the imposition of appropriate civil penalties and issuance of an injunction, AEP will continue to violate EPCRA's reporting requirements in section 304.

46. AEP is subject to an injunction ordering it to cease its violations of EPCRA's reporting requirements in section 304.

47. As a result of these violations, CAP's members have been unable to determine the quantities of sulfuric acid to which they may have been exposed.

## Count Four

48. Section 111(g) of CERCLA, 42 U.S.C. § 9611(g), provides that, until EPA promulgates rules under that section, the owner or operator of any facility from which a hazardous substance has been released shall provide reasonable notice to potential injured parties by publication in local newspapers serving the affected area. EPA has not yet promulgated such rules.

49. Section 310(a)(1) of CERCLA, 42 U.S.C. § 9659(a)(1), authorizes any person to commence a civil action on his own behalf against the owner or operator of a facility for violation of any condition or requirement which has become effective pursuant to CERCLA, including section 111(g).

50. On each date when visible blue plumes of sulfuric acid aerosol released from the Gavin Plant have extended beyond its property line, including, but not limited to, the dates listed in paragraph 12 above, these releases have had the potential of causing injury to CAP's members.

51. AEP failed to provide reasonable notice of those releases by publication in any

newspapers serving the Cheshire area, in violation of section 111(g) of CERCLA, 42 U.S.C. § 9611(g).

52. AEP's violations of section 111(g) of CERCLA are continuing and/or intermittent.

53. AEP's violations of section 111(g) have been numerous and repeated. Because of this extensive history of reporting violations, plaintiff believes and alleges that, without the issuance of an injunction, AEP will continue to violate that section.

54. AEP is subject to an injunction ordering it to cease its violations of CERCLA's reporting requirements in section 111(g).

## Relief Requested

WHEREFORE, CAP respectfully requests that the Court:

1. Declare that there exists or may exist an imminent and substantial endangerment to health and the environment caused by AEP's past and/or present handling, treatment, and/or disposal of solid waste with respect to emissions of sulfuric acid aerosol from the Gavin Plant;

2. Order AEP to take all such actions as may be necessary to eliminate any such endangerment, including:

(a) install a system for continuous video monitoring and quantitative measurement of emissions of sulfuric acid aerosol from the Gavin Plant;

(b) provide CAP and its members with immediate notification and full access to all data generated by that system on a real-time basis;

(c) fund an independent, comprehensive, scientific study to determine the precise nature and extent of the endangerment;

(d) fund an independent, comprehensive, scientific study, based on the results of the study described in subparagraph (c) above, of appropriate, effective, environmentally-sound means to eliminate the endangerment; and

(e) develop and implement an appropriate and effective remedial plan, based on the studies described in subparagraphs (c) and (d) above;

3. Declare AEP to have violated and to be in violation of the reporting and notification requirements of CERCLA and EPCRA;

4. Order AEP to operate its Gavin Plant in accordance with the reporting and notification requirements of CERCLA and EPCRA;

5. Assess appropriate civil penalties against AEP of up to $27,500 per day for each day that violations of CERCLA and EPCRA have continued;

6. Award plaintiff its costs (including reasonable attorney and expert witness fees) as authorized by section 7002(e) of RCRA, 42 U.S.C. § 6972(e), section 310(f) of CERCLA, 42 U.S.C. § 9659(f), and section 326(f) of EPCRA, 42 U.S.C. § 11046; and

7. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Michael V. Kelley
Ohio Supreme Court # 0002679
John A. Sivinski
Ohio Supreme Court # 0036712
Sandra B. Sommers
Ohio Supreme Court # 0029180
KELLEY & FERRARO, LLP
1300 E. Ninth Street, Suite 1901
Cleveland, OH 44114

(216) 575-0777
(888) 839-8479

James M. Hecker
TRIAL LAWYERS FOR PUBLIC JUSTICE
1717 Massachusetts Avenue, N.W. #800
Washington, D.C. 20036
(202) 797-8600

Brian Glasser
A.B. Moloy
BAILEY & GLASSER
227 Capitol Street
Charleston, WV 25301
(304) 345-6555

James Ferraro
Ohio Supreme Court # 0076089
Ross Johnston
FERRARO & ASSOCIATES, P.A.
4000 Ponce de Leon Blvd., Ste. 700
Miami, FL 33146
(305) 375-0111
(800) 275-3332

Counsel for CAP