UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CITIZENS AGAINST POLLUTION,**

       **Plaintiff,**                           Case No. C2-04-CV-371
                                           JUDGE GREGORY L. FROST
     **v.**                                     Magistrate Judge Abel

**OHIO POWER COMPANY,**

       **Defendant.**

## OPINION & ORDER

Defendant Ohio Power Company ("OPC") moves the Court for an order excluding the testimony, report, and deposition testimony of Plaintiff Citizens Against Pollution's ("CAP") expert, Phyllis Fox, Ph.D., P.E. ("Fox"). (Doc. # 87). CAP objects to the motion. (Doc. # 89). For the reasons that follow, the Court **GRANTS** the motion in part and **DENIES** the motion in part. (Doc. # 87).

## MOTIONS *IN LIMINE*

The Court exercises discretion over matters involving the admissibility and relevancy of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). The nature of a motion *in limine* as well as the inquiry involved ruling on such motions is well settled:

> Motions *in limine* are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n.4 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions

>of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted).  Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.  The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.  *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400-01 (N.D.Ill.1993).

*Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846-47 (N.D. Ohio 2004).  Within this analytic framework, the Court will proceed to address the *Daubert* inquiry before turning to the pending motion *in limine*.

## *DAUBERT* ANALYSIS

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court held that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert,* 509 U.S. at 597.  The relevant Federal Rule of Evidence is Rule 702, which provides:

>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Further, the Supreme Court has made clear that Rule 702 applies not only to

2

scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable. They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, ___ F.3d ___, 2004 WL 2901186, at *6 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four

3

*Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert,* 509 U.S. at 593.) *See also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The United States Supreme Court and Circuit Courts of Appeal have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation, and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon

4

breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system; rather, "[v]igorous cross-examination, presentation of contrary evidence ... are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## DISCUSSION

OPC's attack on Fox is threefold: (1) Fox's testimony is impermissible because she improperly attempts to opine about the meaning of federal regulations which is an issue for the Court; (2) Fox lacks the requisite qualifications; and (3) Fox's opinion has no basis in scientific or statistical methodology. (Doc. # 87 at 1-2). CAP asserts that: (1) Fox's testimony covers more ground than OPC alleges; (2) Fox only offers her opinion on the facts; and (3) Fox is qualified. (Doc. # 89 at 1-9).

### A.     Fox is Qualified.

Taking OPC's arguments out of turn and in a more logical order, the Court will first examine Fox's qualifications. Fox's curriculum vitae establishes that she is qualified as an expert because of her knowledge, skill, experience, training, and education. Fox earned her bachelors of science in physics with high honors from the University of Florida at Gainesville before obtaining her masters in environmental and civil engineering from the University of California-Berkeley. (Doc. # 87 Ex. A at 1). Fox later earned a Ph.D. in environmental and civil engineering from that same institution.

Fox is a registered professional engineer in six states. *Id.* at 2. She is a board certified

environmental engineer by the American Academy of Environmental Engineers, and is a qualified environmental professional by the Institute of Professional Environmental Practice.  *Id.* Fox is listed in 2002's Who's Who Environmental Registry. *Id.*

Fox has completed numerous courses and seminars on a wide range of pollution topics, including sulfate minerals, utility industry issues, and air pollutant emission calculations.  *Id.* She also worked as an engineer at Bechtel, Inc. before turning to a consulting career.  *Id.*  To that end, Fox has appeared as an expert witness or served as a litigation consultant in more than sixty environmental cases.  *Id.* at 3-13, Ex. JPF-2.  Moreover, she has prepared several comments on proposed environmental legislation.  *Id.* at 14-17.  Furthermore, she has designed and implemented several air-quality monitoring programs.  *Id.* at 19-20.  Lastly, her curriculum vitae contains pages worth of publications and presentations that she has participated in through the years.  *Id.* at 21-27.

As a result of Fox's extensive knowledge, skills, and education in environmental matters, the Court concludes that Fox is qualified to receive an expert designation in this matter.  OPC's objection to the contrary is **OVERRULED**.

    **B.**    **Fox's Testimony Would be Helpful.**

The Court also concludes that Fox's testimony will help the Court understand the evidence.  Specifically, Fox's report outlines the history of the Gavin Plant's sulfuric acid emissions, OPC's abatement measures, and OPC's reporting of the levels of sulfuric acid emissions.  In addition, Fox's report discusses CERCLA and EPCRA.  Such information is complex and demands the guidance of one schooled in the area.  However, because the Court has already held that the Gavin Plant's sulfuric acid emissions were continuous, the Court **GRANTS**

OPC's motion to exclude Fox's testimony on that topic.

  **C.**  **Fox's Testimony is Permissible**.

  OPC asserts that Fox's testimony is impermissible because she improperly attempts to opine about whether the Gavin Plant's emissions were stable in quantity and rate and whether the Gavin Plant had a sound technical basis for concluding that it qualified for the reporting exemption. (Doc. # 85 at 3-5, 10-11). In essence, OPC contends that Fox may not assert her opinion regarding whether OPC's sulfuric acid emissions were stable in quantity and rate and whether the Gavin Plant had a sound technical basis for concluding that it qualified for the reporting exemption. *Id.* Conspicuously absent from OPC's argument is any mention of Fed. R. Evid. 704(a), which provides, in relevant part: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." As such, the Court **OVERRULES** OPC's "ultimate issue" objection.

  **C.**  **Fox's Opinions have an Appropriate Scientific or Statistical Methodology**.

  Lastly, OPC contends that Fox's opinions lack any scientific analysis. (Doc. # 87 at 9-10). This is incorrect. Fox's report specifically states that it is based upon OPC's own data. Surely, OPC does not intend to intone that its own data is flawed or insufficient. Next, Fox utilized several established physical and chemical principles to interpret that data, including the ideal gas law. (Doc. # 87 Ex. A 29-36). Finally, OPC does not assert that Fox applied the data in an unreliable manner; in fact, the Court finds Fox's stated methods and application to be reliable under the *Daubert* standard. Consequently, the Court **OVERRULES** OPC's final objection to Fox's report and testimony. (Doc. # 85).

  This Order is tempered by the fact that it is a ruling on a motion *in limine*; thus, the Court

may alter its decisions at trial should circumstances arise that warrant such action.

    **IT IS SO ORDERED.**


       /s/   Gregory L. Frost

    **GREGORY L. FROST**
    **UNITED STATES DISTRICT JUDGE**