IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS AGAINST POLLUTION, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 2:04-CV-0371 |
| | : | JUDGE GREGORY L. FROST |
| OHIO POWER COMPANY, | : | MAGISTRATE JUDGE MARK R. ABEL |
| Defendant. | : | |

## CONSENT DECREE (CORRECTED)

WHEREAS, Citizens Against Pollution ("CAP") filed an Amended Complaint against Defendant Ohio Power Company ("OPC") (CAP and OPC hereinafter collectively referred to as "the Parties") on July 20, 2004, alleging claims against OPC under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9659(d)(1), and the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C § 11046(d)(1), based on alleged releases of sulfuric acid emissions from OPC's James M. Gavin Power Plant (the "Gavin Plant") in Cheshire, Ohio; and

WHEREAS, OPC filed its Answer to the Amended Complaint on July 30, 2004, denying any liability for any of the claims alleged therein, and continues to deny any such liability; and

WHEREAS, the Parties have negotiated in good faith and at arm's length, and desire to resolve this matter in a manner that is fair, just, and reasonable, and in the best interest of the Parties and the public interest; and

WHEREAS, the Parties consent to entry of this Consent Decree without trial of any issue, agree that this settlement is consistent with the goals of RCRA, CERCLA, and EPCRA, and agree that the entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter.

NOW THEREFORE, without determination of any issue of fact or law raised by the Amended Complaint, and in full satisfaction of any claims associated with releases of sulfuric acid emissions from the Gavin Plant that were or could have been asserted by CAP and its members up to the date of entry of this Decree and in lieu of the payment of civil penalties or any other available remedy, the Parties hereby agree, and it is ORDERED as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 42 U.S.C. §§ 6972(a)(1)(B), 9659(d)(1) and 11046(d)(1), and 28 US.C. § 1331. Venue is proper in this District under 42 U.S.C §§ 6972(a), 9659(b)(1) and 11046(b)(1) and 28 U.S.C. §1391(b) and (c).

## APPLICABILITY

2. Upon entry, the provisions of this Consent Decree shall apply to and be binding on:

   a. CAP and its individual members, and their officers, directors, employees, successors, assigns, or agents in their capacities as such; and

   b. OPC, and its officers, directors, employees, successors, assigns, or agents, in their capacities as such.

## CERCLA AND EPCRA REPORTING

3. Within thirty (30) days of the date this decree is entered as a final order by the Court, OPC will submit a notification pursuant to 40 CFR § 302.8(g)(3) that reports new normal ranges of releases of sulfuric acid emissions for Gavin Units 1 and 2. The upper bound of the new ranges for each unit will be calculated based on a concentration of sulfuric acid in the flue gas at the stack of 14 parts per million ("ppm"), at a normalized dry 3% oxygen flue gas concentration during operation of the selective catalytic reactors ("SCRs"), and 22 ppm, at a normalized dry 3% oxygen flue gas concentration during periods when the SCRs are not in operation. A copy of the notification and supporting calculation from ppm to pounds/day (including the flow rate) will be provided within two business days to counsel for CAP.

4. OPC will submit reports of any release of sulfuric acid emissions from Gavin Units 1 and 2 above the upper bound, and/or reports of any change in its continuous releases of sulfuric acid emissions from Gavin Units 1 and 2, in accordance with the applicable regulatory requirements. A copy of any such report submitted during the term of this Consent Decree will be provided within two business days to counsel for CAP.

## SULFURIC ACID EMISSION TESTING

5. During the period from May 1 through September 30 (the "Ozone Season") in 2007, OPC will conduct stack tests to determine the concentration of sulfuric acid in the flue gases at one unit at the Gavin Plant (the "2007 Ozone Season Initial Tests").

a. The 2007 Ozone Season Initial Tests will be performed on Unit 1 at the Gavin Plant with all three SCR reactors in service and the AOD system in service.

b. Each test will consist of three (3) consecutive runs, each lasting at least fifteen minutes. Sulfuric acid concentrations will be measured using the controlled condensation method and reported for individual tests and as a 3-run average concentration as set forth in Exhibit A.

c. Reports of the 2007 Ozone Season Initial Tests will be provided to counsel for CAP within thirty (30) days of OPC's completion of the 2007 Ozone Season Initial Tests. A sample test report form is attached as Exhibit A. Exhibit A and all information except the average measured concentrations of sulfuric acid adjusted to dry 3% oxygen for each 2007 Ozone Season Initial Test provided by OPC are Confidential Information and must be maintained in accordance with the provisions of the Protective Order entered in this case on February 16, 2005. The 3-run average ppm value of sulfuric acid emission concentrations adjusted to 3% oxygen reported for each 2007 Ozone Season Initial Test is not Confidential Information.

d. A stack test will be conducted once each day at or near maximum daily load for two weeks, and on four (4) days during each of the following two weeks, for a total of twenty-two (22) daily tests within a four-week period during the 2007 Ozone Season.

  e. If measured sulfuric acid emission stack concentrations exceed 14 ppm at dry 3% oxygen during any 2007 Ozone Season Initial Test, the test period will be extended and an additional daily test will be performed.

  f. Stack tests that have data quality problems or that are otherwise incomplete shall not be included in the twenty-two daily tests required in the 2007 Ozone Season Initial Tests. In such events, or for any 2007 Ozone Season test that cannot be completed as scheduled, the test period will be extended and additional daily tests will be performed to obtain the twenty-two daily tests.

6. After the 2007 Ozone Season Initial Tests are completed, OPC will conduct twelve (12) additional sulfuric acid emission stack tests (the "Periodic Tests"), not more than once per 15 days.

  a. Three (3) Periodic Tests will be completed during the 2007 Ozone Season.

  b. Three (3) Periodic Tests will be completed during the period from October 1, 2007, through April 30, 2008.

  c. Three (3) Periodic Tests will be completed during the 2008 Ozone Season.

  d. Three (3) Periodic Tests will be completed during the period from October 1, 2008, through April 30, 2009.

  e. Each Periodic Test will be performed in accordance with Paragraph 5.b of this Consent Decree.

  f. Reports of the Periodic Test results will be provided to counsel for CAP in the form attached as Exhibit A within 7 days of receipt of the test results.

    Reports of the Periodic Tests otherwise will be governed by Paragraph 5.c of this Consent Decree.

  g. Stack tests that have data quality problems or that are otherwise incomplete shall not be included in the twelve daily tests required in the Periodic Tests. In such events, additional daily tests will be performed to obtain the twelve daily tests.

## OTHER INFORMATION

7. Beginning on the day after the 2007 Ozone Season Initial Tests are completed, and continuing until the second anniversary of the date on which the 2007 Ozone Season Initial Tests commence, OPC will collect and record the information necessary to provide a weekly report to counsel for CAP in substantially the form reflected in Exhibit B (the "Weekly Operational Report"),.

  a. Weekly Operational Reports for each Unit will be provided on Fridays for the seven-day period ending at midnight the preceding Friday.

  b. Exhibit B and all information in the Weekly Operational Reports provided by OPC are Confidential Information and must be maintained in accordance with the provisions of the Protective Order entered in this case on February 16, 2005.

8. During each day that testing is conducted as part of the 2007 Ozone Season Initial Tests, and during each day that testing is conducted as part of the Periodic Tests, OPC will collect and record the operational parameters listed

6

in Exhibit C (the "Detailed Operational Report") on an hourly basis for each Unit and provide such report to counsel for CAP.

   a. Detailed Operational Reports will be provided to counsel for CAP at the same time that the test reports are provided for the 2007 Ozone Season Initial Tests and the Periodic Tests.

   b. Exhibit C and all information in the Detailed Operational Reports provided by OPC are Confidential Information and must be maintained in accordance with the provisions of the Protective Order entered in this case on February 16, 2005.

9. OPC will also provide counsel for CAP with a copy of the quarterly continuous emission monitoring reports submitted to the United States Environmental Protection Agency ("U.S. EPA"), Clean Air Markets Division under 40 CFR Part 75 for Gavin Units 1 and 2 (the "CEMs Reports"), beginning with the second quarter of 2007. OPC will provide the quarterly reports to counsel for CAP within 5 days of their submission to U.S. EPA.

10. CAP may request a Detailed Operational Report as defined in paragraph 8 above for a reasonable number of additional specific days (not to exceed 10 days per 12-month period, beginning with the first 2007 Ozone Season Initial Test), provided CAP requests this information within 30 days after receipt of the CEMS Report that contains monitoring information for that day.

   a. OPC will provide the Detailed Operational Report within 7 days of receipt of CAP's request.

    b. Exhibit C and all information in the Detailed Operational Reports provided by OPC are Confidential Information and must be maintained in accordance with the provisions of the Protective Order entered in this case on February 16, 2005.

## CONTINUOUS MONITORING

11. OPC will continue to monitor research and other activities related to the development of reliable continuous monitoring technologies for sulfuric acid emissions through the Electric Power Research Institute ("EPRI") and other organizations. If, at any time during the term of the Consent Decree, OPC installs continuous monitoring equipment for sulfuric acid emissions from the units at the Gavin Plant, OPC may provide continuous sulfuric acid emissions monitoring data to counsel for CAP in lieu of conducting any remaining Periodic Tests, providing Weekly Operational Reports, and providing Detailed Operational Reports for dates after the continuous monitors are installed and continuous data reporting commences.

## PLANNED MAINTENANCE

12. It shall not be a violation of the Consent Decree if sulfuric acid emissions from the Gavin Plant exceed the upper bound reported in the continuous release reports filed by OPC under paragraph 1 of this Consent Decree during periods of planned maintenance on the sulfuric acid emissions mitigation systems, provided that the following steps are taken:

    a. OPC shall not schedule planned maintenance activities on the mitigation systems while the SCRs are in operation;

8

    b. OPC shall typically schedule planned maintenance activities on the mitigation systems during the period from October 15 through April 15; provided, however, that if such maintenance is necessary during other periods to assure continued reliable operation of the mitigation systems, OPC shall use its best efforts to schedule such maintenance during weather conditions not conducive to plume touchdowns;

    c. OPC shall provide at least twenty-four (24) hours advance notice of planned maintenance activities on the mitigation systems to counsel for CAP.

## FORCE MAJEURE

13. For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of OPC, its contractors, or any other entity controlled by OPC, that prevents or delays compliance with any provision of this Consent Decree or otherwise causes a period of noncompliance despite the exercise of due care by OPC. The Parties agree that the kinds of events listed below are among those that could qualify as Force Majeure Events: a condition deemed by a regulatory agency with jurisdiction over the Gavin Plant to constitute an emergency; orders issues by a government official, agency, or other regulatory body; electricity supply emergency conditions; fires, floods, or other natural catastrophes; acts of war, civil disturbance, or labor unrest; or other circumstances beyond the control of OPC. This list is intended to be illustrative, and not exhaustive. Increases in costs or expenses incurred in

fulfilling the requirements of this Consent Decree shall not be considered a Force Majeure Event. OPC shall have the burden of proving that any delay or period of noncompliance is caused by circumstances beyond the control of OPC.

14. If a Force Majeure Event occurs or has occurred that may prevent or delay compliance, or cause a period of noncompliance with any obligation imposed on OPC under this Consent Decree, OPC shall notify counsel for CAP in writing as soon as possible, but, except for good cause shown, in no event later than ten (10) business days following the date OPC first knew, or should have known by the exercise of due diligence, that the event caused or may cause such a delay or period of noncompliance. For purposes of this paragraph "good cause" shall mean an event that necessarily impairs OPC's capacity to comply with the notice requirements. In the notice, OPC shall describe the event, the anticipated length of time of any delay or period of noncompliance, and the measures taken or to be taken, if any, to minimize the delay or period of noncompliance. OPC shall adopt reasonable measures to avoid or minimize any delay or period of noncompliance.

15. OPC shall provide written notice to counsel for CAP when any delay or period of noncompliance caused by a Force Majeure Event has been cured. Any dispute regarding a Force Majeure Event shall be subject to the Dispute Resolution provisions of this Consent Decree.

16. It shall not be a violation of this Consent Decree if sulfuric acid emissions from the Gavin Plant exceed the applicable upper bound, or OPC is unable to

comply with any other obligation of this Consent Decree, due to a Force Majeure Event.

## DISPUTE RESOLUTION

17. Any dispute concerning the nature or scope of the obligations imposed by this Consent Decree, including, but not limited to, any dispute concerning OPC's claim of a Force Majeure Event, or the length of delay or period of noncompliance caused by a Force Majeure Event, may be submitted to the Court for resolution by either Party.

   a. The Party seeking to invoke the Dispute Resolution provisions of this Consent Decree shall first give notice to the other Party of the nature of the dispute and attempt to resolve the matter informally and without resort to the Dispute Resolution procedures before the Court. Such notice shall be given a reasonable period, not less than thirty (30) days, prior to giving notice to the Court pursuant to Subparagraph b below.

   b. If the Parties are unable to resolve the dispute informally under Subparagraph a above, the Party invoking the provisions of the Dispute Resolution procedure of this Consent Decree will give written notice to the Court and the other Party describing the nature of the dispute and the position of the Party giving such notice with respect to such dispute.

   c. Within ten (10) business days following the submission of the notice required by Subparagraph b above, the other Party shall submit a response to the notice by filing the response with Court and serving the response on

11

the Party invoking the Dispute Resolution provisions of this Consent Decree.

18. The Parties may agree in writing, and by providing written notice to the Court, to extend the period for informal resolution, or the dates for filing the notice and response required by Paragraph 17 of this Consent Decree.

19. The Court shall determine all disputes pursuant to applicable provisions of law and the terms of this Consent Decree.

## ATTORNEYS FEES AND COSTS

20. The Parties will attempt to reach agreement with respect to reasonable attorneys' fees, expert witness fees, and costs claimed by CAP to be recoverable under the citizen suit provisions of applicable law, within thirty (30) days of the effective date of this Consent Decree. If such agreement is reached, OPC will make payment of the agreed amount by check payable to Trial Lawyers for Public Justice, P.C. (TLPJ), within thirty (30) days after the date of the agreement, and notify the Court that such agreement was reached and payment has been made. TLPJ will be responsible for distributing the agreed amount among CAP's attorneys.

21. If the Parties are unable to reach agreement within the time specified above, within sixty (60) days of the effective date of this Consent Decree, CAP will submit to the Court, with a copy to counsel for OPC, a request for fees and costs, with a detailed statement in support of such request allocating all fees and costs incurred to the extent practicable between the RCRA and EPCRA/CERCLA claims alleged in the Amended Complaint. OPC shall

        submit any response to CAP's request within thirty (30) days after CAP's request is filed with the Court.

22.    The Court shall determine any disputed request for the award of attorneys' fees, expert witness fees, and costs in accordance with applicable law.

## RESOLUTION OF CLAIMS

23.    Entry of this Consent Decree shall fully satisfy and resolve any and all claims for relief alleged by CAP or its members in the Amended Complaint, or that could have been alleged by CAP or its members for alleged releases of sulfuric acid emissions from the Gavin Plant, in lieu of civil penalties or any other available remedies.

## RETENTION OF JURISDICTION

24.    The Court shall retain jurisdiction of this case after entry of this Consent Decree to enforce compliance with its terms and to take any necessary actions for its interpretation, construction, execution, modification, or adjudication of any disputes. During the term of the Consent Decree, and subject to the Dispute Resolution provisions above, either Party may apply to the Court for any relief necessary to construe or effectuate its terms and the relief afforded thereby.

## EFFECTIVE DATE

25.    The effective date of this Consent Decree shall be the date upon which it is entered as a final order by the Court.

## MODIFICATION

26. The terms of this Consent Decree may be modified only by a written agreement signed by counsel for the Parties. Where the modification constitutes a material change of the Consent Decree, it shall be effective only upon approval by the Court. Informal agreements to extend any time period in the Consent Decree, or to change the format or content of any Exhibit to this Consent Decree, shall not be construed to be a material change of the terms of the Consent Decree requiring approval of the Court, but shall be made by written agreement between the Parties.

## NOTICES

27. Whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

    a. As to CAP or counsel for CAP: James M. Hecker, Trial Lawyers for Public Justice, 1825 K Street, N.W., Suite 200, Washington, D.C. 20006, (202) 797-8600, facsimile (202) 232-7203, jhecker@tlpj.org.

    b. As to OPC or counsel for OPC: Janet J. Henry, American Electric Power Service Corporation, 1 Riverside Plaza, Columbus, Ohio 43215, (614) 716-1612, facsimile (614) 716-1687, jjhenry@AEP.com.

28. All notifications, communications, or submissions made under this Consent Decree shall be sent either by:

    a. Overnight mail or delivery service; or

    b. Certified or registered mail, return receipt requested; or

    c. Facsimile transmission; or

      d. Electronic transmission, unless the recipient is not able to review the transmission in electronic form.

29. All notifications sent by the means listed in paragraph 27 shall be deemed submitted on the date the mailed copies are received from the delivery service, or on the date the facsimile or electronic transmissions are sent, unless the recipient shows it did not receive such transmissions.

30. Any Party may change either the notice recipient or the information for providing notices to it by serving the other Party with a notice setting forth the new information.

## SIGNATORIES

31. Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into this Consent Decree and to execute and legally bind the Party or Parties he or she represents to this document.

## TERMINATION

32. This Consent Decree shall terminate on the second anniversary of the date OPC conducts its first 2007 Ozone Season Initial Test. OPC shall provide notice to counsel for CAP and the Court of the termination date of the Consent Decree.

SO ORDERED, THIS 8th DAY OF _December_, 2006.

_____
Gregory L. Frost
United States District Judge

| For Plaintiff: | For Defendant: |
|---|---|
| *s/ Sandra B. Sommers per authorization from James Hecker* | *s/ Alvin J. McKenna* |
| Sandra B. Sommers (0029180), Trial Attorney | Alvin J. McKenna (0023145), Trial Attorney |
| Kelley & Ferraro, LLP | Christopher Schraff (0023030) |
| 1300 E. Ninth Street | Molly S. Crabtree (0073823) |
| Suite 1901 | Porter, Wright, Morris & Arthur, LLP |
| Cleveland, OH 44114 | 41 South High Street |
| (216) 575-0777 | Columbus, OH 43215 |
| sbsommers@kelley-ferraro.com | (614) 227-2000 |
| | amckenna@porterwright.com |
| | cschraff@porterwright.com |
| | mcrabtree@porterwright.com |

OF COUNSEL:

OF COUNSEL:

James M. Hecker
Trial Lawyers for Public Justice
1717 Massachusetts Avenue, NW #800
Corp.
Washington, D.C. 20036
jhecker@tlpj.org

Benjamin Bailey
Bailey & Glasser
227 Capitol Street
Charleston, WV 25301
bbailey@baileyglasser.com

Counsel for Citizens Against Pollution

D. Michael Miller (0023117)
Janet J. Henry (0022949)
American Electric Power Service

1 Riverside Plaza, 29th Floor
Columbus, OH 43215-2355
(614) 716-1000
dmmmiller@AEP.com
jjhenry@AEP.com

Counsel for Ohio Power Company