**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CITIZENS AGAINST POLLUTION,**

        **Plaintiff,**                         **Case No. C2-04-CV-371**
                                            **JUDGE GREGORY L. FROST**
     **v.**                                **Magistrate Judge Abel**

**OHIO POWER COMPANY,**

        **Defendant.**

**<u>OPINION & ORDER</u>**

This matter comes before the Court for consideration of a Motion for Attorneys' Fees, Expert Witnesses' Fees, and Expenses (Doc. # 105) filed by Plaintiff Citizens Against Pollution ("Plaintiff"), a Memorandum In Opposition (Doc. # 108) filed by Defendant Ohio Power Company ("Defendant"), and a Reply. (Doc. # 109.) A hearing was held on March 29, 2007 and thereafter a Supplemental Motion (Doc. # 113) was filed by Plaintiff, and a Memorandum in Opposition (Doc. # 115 ) was filed by Defendant. Plaintiff requests $1,056,501 in attorneys' fees[1], $106,119.54 in expert witnesses' fees[2], and $63,788.23 in expenses for a total amount of $1,226,408.77 plus interest from December 8, 2006.

**<u>A. Background</u>**

Plaintiff has brought this case pursuant to the citizen suit sections of the following acts: (1) the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B); (2) the

---

[1]     Plaintiff originally sought $1,024,043.50 in attorneys' fees and $62,685.33 in expenses. (Doc. # 105.) These amounts, however, were adjusted upward to account for the time and resources it expended for the motion and hearing on the motion for attorneys' fees and expenses. (Doc. # 113.)

[2]     Plaintiff originally sought $80,674.84 in expert witnesses' fees. (Doc. # 105) This figure, however, was adjusted once upward to account for additional expert witness's fees. (Doc. # 109.)

1

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9659(d)(1); and (3) the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11046(d)(1).  After 1½ days of trial, the parties settled this action through a consent decree entered by this Court on December 8, 2006.  The only issues left to resolve by this Court are the amounts of attorneys' fees, expert witnesses' fees, and expenses that this Court should award Plaintiff.

Plaintiff argues that as the prevailing party, it is entitled to an award of fees and expenses. Plaintiff contends that it obtained substantial relief on its CERCLA and EPRCA reporting claims ("Reporting Claims").  Moreover, Plaintiff alleges that although it was unsuccessful on its RCRA claim, it is entitled to fees for work on its RCRA claim as well.  Plaintiff argues that RCRA fees are warranted because its RCRA claim is related to its Reporting Claims.  Plaintiff then offers several reasons why its total requested fee, expense, and cost award should not be reduced.  First, Plaintiff posits that it was successful on its Reporting Claims.  Second, Plaintiff contends that its fees and costs were reasonable and necessary in light of the novelty and the complexity of Plaintiff's claims.

Conversely, Defendant argues that Plaintiff's fees request should first be reduced for excessive, redundant, and unnecessary hours.  Defendant then asks the Court to further reduce Plaintiff's requested fees by 80 percent by arguing that the consent decree provides only limited relief in comparison to the relief Plaintiff sought in its Amended Complaint.  (Doc. # 14.) Specifically, Defendant argues that Plaintiff was unsuccessful on its RCRA claim and experienced only limited success on its Reporting Claims.  Defendant also asks this Court to award no fees to one of Plaintiff's expert witnesses, Dr. Batterman, and reduce the fees for

2

Plaintiff's other expert witness, Dr. Fox, by 50 percent.  Finally, Defendant requests a substantial reduction in Plaintiff's request for costs.

With respect to Plaintiff's Supplemental Motion (Doc. # 113), Defendant makes the same arguments aforementioned regarding the reasonableness of fees.  Additionally, Defendant argues that Plaintiff violated the consent decree when Plaintiff failed to submit its Supplemental Motion (Doc. # 113) to Defendant prior to submitting it to this Court.  Defendant also claims that Plaintiff's time entries were untimely.

For the reasons set forth in this Opinion & Order, this Court finds the following: (1) Plaintiff's RCRA endangerment claim is unrelated to its Reporting Claims, accordingly this Court first separates out the time solely expended on Plaintiff's unrelated, unsuccessful RCRA claim–approximately 17 percent of the total hours expended--and thereby reduces Plaintiff's overall attorneys' fees request by 17 percent[3]; (2) Plaintiff achieved substantial success on its remaining Reporting Claims in comparison to the relief sought; (3) in light of the overall relief obtained on Plaintiff's Reporting Claims in relation to the hours expended, Plaintiff's requested attorneys' fees is reasonable and therefore this Court awards Plaintiff $876,895.83 in attorneys' fees; (4) with respect to expert fees, this Court awards no fees to Dr. Batterman--whose work this Court solely attributes to Plaintiff's RCRA claim--and awards Dr. Fox's fees in full in the amount of $68,451.61; (5) in regard to costs, Plaintiff's request is reasonable, and therefore this

---

[3]        (Doc. # 105; Doc. # 113.)  With respect to Plaintiff's Motion for Supplemental Attorneys' Fees and Expenses (Doc. # 113), this Court also reduces Plaintiff's overall request of $32,457.50 in fees by 17 percent. Because 17 percent of Plaintiff's total hours prior to its Supplemental Motion is attributable to time solely expended on Plaintiff's unrelated, unsuccessful RCRA claim, this Court assumes--with no evidence to the contrary presented– that 17 percent of the total hours that Plaintiff expended on its Supplemental Motion (Doc. # 113) and hearing is also solely attributable to RCRA.  *See, e.g., Couter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1983 (recognizing that a court may award attorneys' fees and expenses for time spent on post-trial work).

Court awards Plaintiff $63,788.23 in costs; and finally (6) this Court does not award interest from December 8, 2006, but awards interest from the date of the filing of this order.

This Court also makes several findings with respect to Plaintiff's Supplemental Motion (Doc. # 113).  First, the amount of time that Plaintiff expended preparing its attorneys' fees application was less than 3 percent of the total hours that it expended.  Second, this Court finds that Plaintiff's Supplemental Motion (Doc.# 113) did not violate the consent decree.  The Court acknowledges that pursuant to the consent decree, this Court would dispose of all issues that the parties could not resolve themselves.  The Court, however, finds that the parties had already removed the issues of fees and expenses from the purview of negotiations and had placed these issues in front of the Court in the hearing on March 29, 2007.   Moreover, this Court finds that the time entries in Plaintiff's Supplemental Motion  (Doc. # 113) are timely.  If Plaintiff had, as the Defendant suggested, attached to its original Reply (Doc. # 109) its time entries in preparation for the hearing on fees and expenses, this Court would have struck them and ordered Plaintiff to file a supplemental motion.  The content of a reply must be limited in its scope to the issues that the parties raised in their original motion and memorandum in opposition.  Thus, Plaintiff acted properly when it chose to file a Supplemental Motion (Doc. # 113) for the time that it expended after the December 8, 2006 consent decree and after its filing of its Motion (Doc. # 105) on February 5, 2006, rather than attaching additional time entries to its Reply. (Doc. # 109.)

## B. Discussion

### 1. Plaintiff is a Prevailing Party

 The citizen suit provisions aforementioned authorize the Court, "in issuing any final

4

order in any action" to "award costs of litigation (including reasonable attorney and expert

witness fees) to the prevailing or substantially prevailing party, whenever the court determines

such award is appropriate." 42 U.S.C. §§ 6972(e), 9659(f), 11046(f).  Thus, this Court must first

determine whether Plaintiff is a prevailing party.  *DiLaura v. Township of Ann Arbor*, 417 F.3d

666, 670 (6th Cir. 2006); (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489

U.S. 782, 789 (1989)) (stating that "[p]revailing party status is a statutory threshold which must

be crossed before there is a consideration of a fee award.")  A party prevails when it achieves

some benefit it sought on any significant issue in the litigation, and when it obtains a court-

ordered material alteration in the legal relationship with the other parties.  *See DiLaura,* 417 F.3d

at 670 (citations omitted).  A material alteration requires that "[t]he plaintiff [ ] obtain an

enforceable judgment against the defendant from whom fees are sought, or comparable relief

through a consent decree or settlement."  *Farrar v. Hobby,* 506 U.S. 103, 111 (1992) (quoting

*Garland*, 489 U.S. at 792-93); *see also DiLaura,* 417 F.3d at 670.  In the present case, it is

undisputed that Plaintiff did not succeed on its RCRA claim.  In light of the Consent Decree and

the relief that Plaintiff obtained on its Reporting Claims[4], however, the Court finds that Plaintiff

is the prevailing party.  This Court finds that Plaintiff is the prevailing party even though it

succeeded on some but not all of its claims for relief.  *See Hensley v. Eckerhart*, 461 U.S.

424,434-35 (1983).   Pursuant to 42 U.S.C. §§ 6972(e), 9659(f), 11046(f), Plaintiff, as the

prevailing party, is entitled to attorneys' fees, expert witnesses' fees and expenses.

### 2. Reasonableness of Attorney and Expert Witnesses' Fees and Expenses

This Court next turns to the issue of whether Plaintiff's requested award plus interest is

---

[4]        This Court will later address the degree of success Plaintiff achieved on its Reporting Claims.

reasonable.  To aid in this determination, the Court looks to precedent involving fee applications.

Such precedent indicates that Plaintiff bears the burden of proving that the requested fees and

expenses are reasonable.  *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999).  A reasonable fee is

one that attracts competent counsel while avoiding a windfall to counsel.  *Id*. at 472.  In

determining what is reasonable, the general approach is to "first determine the lodestar amount

by multiplying the reasonable number of hours billed by a reasonable billing rate."  There is a

"strong presumption that the lodestar represents the reasonable fee."  *City of Burlington v.*

*Dague*, 505 U.S. 557, 562 (1992).

That amount, however, can then be adjusted based on a twelve-factor test used for

assisting in the determination of the reasonableness of an application for attorney's fees.[5]  *Id*. at

471-72 n.3 (adopting factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d

714 (5th Cir. 1974)).  These factors include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of
> the questions presented; (3) the skill needed to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time
> limitations imposed by the client or the circumstances; (8) the amount involved
> and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Id*. at 472.  Guided by the foregoing analytic framework, the Court should first calculate the

lodestar amount.  Although the United States Supreme Court has recognized that oftentimes the

traditional twelve factors "are usually subsumed with the initial calculation of hours reasonably

---

[5]       Although the relied-upon *Johnson* case has been abrogated, its twelve-factor test remains good
law.  *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("*Johnson's* 'list of 12' thus provides a useful catalog of the
many factors to be considered in assessing the reasonableness of an award of attorney's fees").

expended at a reasonable hourly rate," the Court should then address the relevant factors after the lodestar analysis. *Hensley,* 461 U.S. at 430 n.3.

In making this determination in a partial victory case, this Court must first exclude any time spent solely spent by Plaintiff on its unsuccessful RCRA claim if the Court finds that Plaintiff's RCRA claim is unrelated to Plaintiff's Reporting Claims. *Harper v. BP Exploration & Oil, Inc*., 3 Fed. Appx. 204, 207 (6th Cir. 2001). Alternatively, if the unsuccessful RCRA claim is related to Plaintiff's Reporting Claims, then this Court must follow Sixth Circuit precedent to analyze the RCRA and Reporting Claims based on Plaintiff's overall success in relation to the hours reasonably expended on all of the claims. *DiLaura,* 417 F.3d at 670 (citing *Hensley,* 461 U.S. at 434-35). In other words, if this Court were to find that Plaintiff's RCRA and Reporting Claims were related, *Hensley* and the Sixth Circuit specifically forbids this Court to analyze this lawsuit as a series of discrete claims. *Id.* Nor would this Court be permitted under that circumstance to then adjust the fees according to the success or failure of each individual claim. *Id.*

This Court, therefore, must first answer whether Plaintiff's RCRA claim is related to Plaintiff's Reporting Claims. Two claims are related when they are based on a common core set of facts or are based on related legal theories. *Jordan v. City of Cleveland,* 464 F.3d 584, 603-04 (6th Cir. 2006); *see also DiLaura,* 417 F.3d at 670 (citing *Hensley,* 461 U.S. at 434). When assessing the relatedness of two claims, a court may also consider whether a plaintiff plead in the alternative or "whether the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *See Jordan,* 464 F.3d at 603.

In the present case, Plaintiff's RCRA claim alleged that the level of sulfuric acids from Defendant's Gavin Plant presented an "imminent and substantial endangerment" under RCRA. Plaintiff's Reporting Claims alleged that Defendant failed to report the releases from the Gavin Plant accurately under CERCLA and EPCRA when it improperly claimed eligibility under the continuous release reporting exemption. Plaintiff argued that Defendant did not qualify for reduced reporting because the Gavin Plant emissions allegedly were not "continuous" or "stable in quantity and rate." Therefore, Plaintiff claimed that Defendant should have reported them on a daily basis.

Plaintiff contends for several reasons that Plaintiff's RCRA and Reporting Claims were closely related both legally and factually. The Court is unconvinced by Plaintiff's arguments and will address each in turn.

Plaintiff contends that its claims were based on the same course of conduct, namely, the Gavin Plant's sulfuric acid emissions from May 2001 to the present. Plaintiff further alleges that its claims were based on a common core of facts concerning the amount of sulfuric acid released from the plant and the effectiveness of Defendant's mitigation measures. Plaintiff posits that the amount of sulfuric acid release "was critical" to both types of claims. Specifically, the RCRA claim was concerned with its magnitude and effect when it was received on the ground, while the Reporting Claims were concerned with the stability of the releases and the accuracy of the reports.

First, this Court finds that Plaintiff's RCRA claim and Reporting Claims are legally unrelated. Plaintiff asserts its RCRA claim pursuant to the Act's citizen suit provision. That provision provides that citizens may commence a suit against any "person who has contributed

or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6903(15).

In contrast, Plaintiff's CERCLA claim is premised upon section 103(a) of the Act.  That section provides "[a]ny person in charge of . . . an onshore facility shall, as soon as he has knowledge of any release (other than a federally permitted release) of a hazardous substance from such . . . facility in quantities equal to or greater than those determined pursuant to section 9602 of this title, immediately notify the National Response Center...."  42 U.S.C. § 9603(a).

Finally, Plaintiff brought its EPCRA claim, pursuant to the statute's citizen-suit provision, 42 U.S.C. § 11046(a)(1), which authorizes civil penalties and injunctive relief against "an owner or operator of a facility for failure," among other things, to "submit a followup emergency notice."  *Sierra Club Inc. v. Tyson Foods, Inc*., 299 F. Supp. 2d 693, 701 (W.D. Ky. 2003*)* (citing Section 304(c) of EPCRA, 42 U.S.C. § 11046(a)(1)(A)(i)).

Under both CERCLA and EPCRA, Defendant must file a report with the appropriate agencies whenever the Gavin Plant emits more than 1,000 pounds of sulfuric acid.  *See* 42 U.S.C. § 9603(a); 42 U.S.C. § 11004(a)(1), (b).  Congress, however, created a reporting exemption to those requirements in 42 U.S.C. § 9603(f)(3) ("Section 103(f)").[6]  Referred to as the "Continuous Release Rule" ("CRR"), Section 103(f) effectively eliminates duplicative release notifications.  In order to qualify for reduced reporting under that section, the person in charge must demonstrate a "sound technical basis" for claiming that a release is continuous rather than episodic.  *Tyson Foods, Inc*., 299 F. Supp. 2d at 711-712 (citing 40 C.F.R. §

---

[6]     The statute's implementing regulations may be found in 40 C.F.R. Parts 302 and 355.

302.8(e)). Therefore, the person in charge must "qualify releases as continuous and stable" to benefit from the reduced reporting requirement of CERCLA § 103(f). If the person in charge fails to do so, any release equaling or exceeding the reportable quantity must be reported as an episodic release on a per-occurrence basis under CERCLA § 103(a). *See also* 55 Fed. Reg. 30166, 30174 (July 24, 1990).

Thus, because Plaintiffs' Reporting Claims and RCRA claim are composed of different elements requiring proof of different facts, this Court concludes that Plaintiff's RCRA claim and Reporting Claims are legally unrelated.

This Court also finds that whether Plaintiff has committed a reporting violation under CERCLA and EPCRA is factually unrelated to whether Defendant's emissions constitute an "imminent and substantial endangerment" under RCRA. Specifically, Plaintiff's RCRA claim arises from an distinct course of conduct than Plaintiff's Reporting Claims. Plaintiff's Reporting Claims arise out of Defendant's alleged failure to properly report emissions when its emissions were no longer "stable in quantity and rate" to qualify for the continuous release exemption. Conversely, Plaintiff's RCRA claim is based solely on the effects of the emissions, not on whether Defendant qualifies for the continuous release reporting exemption. Though the "amount of emissions" is involved broadly in both the RCRA and Reporting Claims, its importance in the Reporting Claims speaks to a course of conduct that is unrelated to the RCRA claim. Thus, this Court finds that when the "core facts" are defined appropriately and contextually, that the RCRA claim and Reporting Claims are not factually related.

Third, Plaintiff alleges that its RCRA claim and Reporting Claims were related because they were alternative theories of recovery. Specifically, Plaintiff first references the fact that in

10

2001–a year when there were frequent blue plume touchdowns and citizen complaints--
Defendant's 2001 continuous release report claimed that emissions during normal operations
were as high as 29 ppm. Plaintiff contends that if Defendant's reported emissions remained
stable at 2001 levels and that report was still accurate, that their Reporting Claims were
incorrect, but the RCRA claim could be viable. Conversely, if Defendant had reduced its
emissions significantly, then the Reporting Claims could be viable based on a lack of stability in
quantity and rate, but the RCRA claim would be without foundation.

 This Court rejects Plaintiff's argument that its RCRA claim and Reporting Claims are
alternative theories of recovery. This Court notes that the continuous release reporting
exemption of EPCRA and CERCLA requires stability in quantity and rate at a particular level.
See 40 C.F.R. § 302.8. As Defendant correctly notes, the reporting requirements do not require
explicitly or implicitly that such releases be reduced unless these releases pose a "substantial or
imminent endangerment" or otherwise violate applicable federal or state omissions standards.
42 U.S.C. §§ 9659(d)(1);11046(d)(1). With this in mind, this Court finds several flaws in
Plaintiff's alternative recovery theories.

 In short, the likelihood of success of the RCRA and Reporting Claims do not operate as
an inverse relationship as Plaintiff contends. Plaintiff's attempt to argue alternative theories fails
to consider the starting point of the emissions level in comparison to whether it is above the level
that would cause a substantial and imminent endangerment. For instance, in Plaintiff's first
scenario, the emissions level remained stable in quantity and rate since 2001. Plaintiff's
explanation negates the possibility the 2001 level could have been already operating below a
level that would cause a substantial and imminent endangerment and then remained at that lower

level steadily until 2006. Therefore, despite Plaintiff's contentions, Defendant could have qualified for continuous release report, and Plaintiff's RCRA claim would be entirely incorrect on this scenario. Thus, it does not follow that because the emissions were at a stable level, there was a greater likelihood that Plaintiff would have succeeded on its RCRA claim. That would only be true if the 2001-2006 stable level was high enough in the first place to pose a substantial and imminent endangerment.

The success of Plaintiff's second hypothetical–where the level dropped since 2001– would also depend upon the starting point of the 2001 level. First, the 2001 level could have already been below a level that would have caused a substantial and imminent endangerment, therefore Plaintiff could potentially have succeeded on its Reporting Claims, but failed on its RCRA claim. The 2001 level, however, could have also been at a level that did cause a substantial and imminent endangerment, and the 2006 level, though lower, could still be operating at a level high enough to also have caused an endangerment. Finally, the 2001 level, could have been operating at a level that did cause a substantial endangerment, and the 2006 level could have fallen to a level low enough not to pose a threat.

In other words, Plaintiff's Reporting Claims and RCRA claim are entirely distinct theories of recovery. This Court's analysis illustrates that a finding that Defendant does not qualify for a continuous release report under EPRCA and CERCLA does not depend upon, or require, a finding of a "imminent or substantial endangerment" under RCRA. Furthermore, the legal and factual distinctions between Plaintiff's Reporting Claims compared to its RCRA claim rebut Plaintiff's argument that the facts about the RCRA claim were relevant to Plaintiff's standing to bring its Reporting Claims.

12

Finally, Plaintiff acknowledges that its RCRA claim and the Reporting Claims sought two different types of relief in theory.  Specifically, Plaintiff recognizes that its RCRA claim sought injunctive relief to reduce emissions, while the Reporting Claims sought imposition of civil penalties and a correction of Defendant's previously filed CERCLA/EPCRA release reports.  Notwithstanding this concession, Plaintiff contends that in practice all of the claims have the effect of reducing sulfuric acid emissions.  Again, this Court is not persuaded.  It does not follow, as Plaintiff suggests, that if Plaintiff succeeded on its Reporting Claims that Defendant's emissions level would per se have been lowered.  Rather, Plaintiff's success on its Reporting Claims would only require Defendant to amend its continuous release report to accurately reflect emissions levels.  But, as Defendant correctly notes, Defendant is relieved from daily emissions reporting requirement only if it qualifies for a continuous release report under 40 CFR § 302.8.  The continuous release exemption does not require that Defendant maintain emissions at any particular level[7]--or automatically at a lower level as Plaintiff suggests- as long as it is stable in quantity and rate.  If the Defendant defines a level in its continuous release reports, stability at that defined level, whatever it may be, is what qualifies Defendant for a reporting exemption.

In sum, success of Plaintiff's Reporting Claims only guaranteed that Defendant has stability at a particular quantity and rate when Defendant files its continuous release report.  Moreover, in the absence of a separate and distinct finding of substantial and imminent endangerment, success on Plaintiff's Reporting Claims does not ensure that the new levels set in the amended continuous release report would be lower than one Defendant previously defined.

---

[7]        Unless these releases pose a "substantial or imminent endangerment" or otherwise violate applicable federal or state omissions standards.

Thus, this Court holds that Plaintiff's RCRA claim is both factually and legally unrelated to Plaintiff's Reporting Claims.  In light of Sixth Circuit precedent, this Court must treat Plaintiff's RCRA claim separately and thereby exclude the time spent on it for purposes of making an initial loadstar calculation.  *DiLaura,* 417 F.3d at 670 (citing *Hensley,* 461 U.S. at 434).

Consequently, this Court will measure the degree of Plaintiff's overall success only in light of Plaintiff's related Reporting Claims.  Thus, this Court finds that when comparing Plaintiff's relief sought with the results that Plaintiff obtained, Defendant wrongly considers both Plaintiff's RCRA claim and Reporting Claims to illustrate that Plaintiff's success was allegedly limited.  In light of this Court's finding regarding Plaintiff's RCRA claim and its subsequent deduction of RCRA claim hours, Plaintiff's Reporting Claims are the only claims left to consider when comparing the relief sought and the results obtained.  It would be improper for this Court to make further reductions in the loadstar amount based on the lack of success of a claim that it has already excluded.  Accordingly, this Court turns to the question of whether the overall relief achieved on Plaintiff's Reporting Claims was significant in relation to the hours reasonably expended on the litigation and the relief sought.  Indeed, according to *Hensley*, the single most important factor regarding the reasonableness of fees is the result that is obtained.  *Id.*, 461 U.S. at 434-36.

In terms of the Reporting Claims, Plaintiff's Amended Complaint sought the following: (1) to declare Defendant to have violated and to be in violation of reporting and notification requirements of EPCRA and CERCLA based on its unlawful use of the continuous release reporting mechanism; (2) to order Defendant to operate the Gavin Plant in accordance with the

14

reporting and notification requirements of CERCLA and EPCRA; (3) to impose civil penalties against Defendant of up to $27,500 per day for each day that violations of CERCLA and EPCRA have continued; and (4) award Plaintiff its costs including reasonable attorneys' fees and expert witnesses' fees authorized by the pertinent sections of CERCLA, and EPCRA, respectively. 42 U.S.C. §§ 9659(f), 11046(f).

This Court finds with respect Plaintiff's Reporting Claims, Plaintiff achieved excellent results through a Consent Decree approved by this Court. First, Defendant has agreed to file a new report with the United States Environmental Protection Agency that contains accurate ranges for the Gavin Plant's sulfuric acid emissions. Second, normal operations at the Gavin Plant have been redefined as the new report creates ranges with a significantly lower upper bound–14 ppm– than its 2001/2002 emissions–as high as 29 ppm. Third, Defendant will conduct dozens of tests of its stack emissions to measure how much sulfuric acid it is emitting. It then has to provide records of those tests and other operational data to Plaintiff. Next, Plaintiff can trigger its own review of Gavin Plant emissions records and operating data at the Gavin Plant up to ten additional days per year for the next two years. Finally, pursuant to the Consent Decree, Plaintiff can publicize these tests, as well as any increased emissions, and can require investigations of any increased emissions that appear to be troublesome. Moreover, this Court seriously considers the fact that the provisions aforementioned are more stringent than those set forth in EPCRA and CERCLA. Finally, Plaintiff's success also is reflected by the fact that the Consent Decree will expose Defendant to public scrutiny if it fails to comply with the terms aforementioned. Thus, this Court finds, that no reduction in Plaintiff's attorneys' fees is warranted based on a lack of success.

Next, Defendant argues that Plaintiff's attorneys' fees should be reduced for "excessive, redundant, and unnecessary hours."  The argument is not well-taken.  As a general matter, the Sixth Circuit has recognized that one issue that arises regarding the reasonableness of hours billed is "whether the lawyer . . . unnecessarily duplicat[ed] the work of co-counsel." *Coulter v. State of Tennessee*, 805 F.2d. 146, 151 (6th Cir. 1986).  The appellate court has held that a district court has the discretion to make a simple across-the-board reduction, by a certain percentage, in order to account for duplicative hours.  *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997) (applying across-the-board reduction of 25%), *overruled on other grounds*, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001).  Moreover,  Plaintiffs have the burden of "documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim." *Moore*, 355 F.3d at 566.  In discussing the amount of detail necessary in documentation submitted to a court, the Sixth Circuit has held that "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile and Composition Roofers, et al., v. G & M Roofing and Sheet Metal Co., Inc*., 732 F.2d 495, 502 n.2. (6th Cir. 1984).  The Court may reduce the award when the submitted documentation is inadequate.  *Reed*, 179 F.3d at  472.

Here, Plaintiff's counsel organized its billing records by dividing them into 22 categories.[8]  In reviewing the submitted billing statements, the Court is neither in the business of

---

[8]     These categories include: case development; notice letter; complaint; scheduling; protective order; document discovery; strategy; client communications; experts; settlement; pretrial conferences; depositions; stipulations; site visits; summary judgment; pretrial order; limine motion; trial preparation; trial; consent decree; attorneys' fees; and other.  (Doc. # 105.)

16

nor interested in second-guessing or micro-managing any firm's business practices.  The Court

has reviewed the billing entries and has discerned that they contain sufficient detail, when read

in context, to enable the Court to determine that Plaintiff's counsel reasonably spent its time in

pursuit of Plaintiff's interests.  Despite Defendant's contentions, this Court finds no evidence in

the record that suggests that Plaintiff's counsel improperly allocated its time between claims or

failed to keep contemporaneous records.  (Doc. # 105.)

Moreover, this Court makes several other findings applying the loadstar factors to the

present case.  First, this Court notes that Plaintiff's counsel's briefing was comprehensive,

detailed, and impressive.  Furthermore, a member of Plaintiff's counsel team, Mr. Hecker,

exhibited an extraordinary command of the facts.  The depth and breadth of his expertise and

knowledge of the case was considerable.  This Court also recognizes the novelty and complexity

of Plaintiff's claims as well as the time and financial risk that they entailed.  Thus, this Court

finds that it was reasonable for Plaintiff to assemble an experienced legal team composed of

outside counsel.

In light of these observations, this Court finds that it would be inappropriate to grant

Defendant's request to reduce Plaintiff's attorneys' fees based on allegedly unreasonable hours.

Rather, this Court concludes, undoubtedly, that the time spent by Plaintiff's counsel on each task

was well-documented, reasonable, and necessary.

### 3. Expert Witness Fees

The fee provisions of CERCLA and EPCRA explicitly authorize payments of expert

witness fees.  *See* 42 U.S.C. §§ 9659(f), 11046(f).  Plaintiff's counsel retained two experts to

assisted it in the case: Dr. Fox and Dr. Batterman.  Defendant also asks this Court to award no

fees to Dr. Batterman and reduce the fees of Plaintiff's other expert witness, Dr. Fox, by 50 percent because of inadequate documentation.  This Court finds that Dr. Batterman's work is solely attributable to Plaintiff's RCRA claim.  Because Plaintiff's RCRA claim was both unsuccessful and unrelated to Plaintiff's Reporting Claims, this Court awards no fees to Dr. Batterman.  Conversely, this Court has reviewed Dr. Fox's billing entries and has discerned that they too contain sufficient detail, when read in context, to enable the Court to determine that she reasonably spent her time in pursuit of Plaintiff's interests.  Thus, this Court awards Dr. Fox's fees in full in the amount of $68,451.61.

### 4. Costs

Plaintiff also requests $63,788.23 in costs.  Defendant argues that the "costs of litigation" recoverable under CERCLA and EPCRA fee provisions is limited to those costs enumerated under 28 U.S.C. § 1920.  *See* 42 U.S.C. §§ 9659(f), 11046(f).  Therefore, Defendant asks this Court to reduce Plaintiff's request for costs by the amount claimed for travel, computer research, and shipping charges.  Defendant's argument does not persuade the Court.

This Court recognizes that Section 1920 enumerates the types of costs that can be assessed against the losing party.  *Baker v. First Tenn. Bank Nat'l Ass'n*, 142 F.3d 431, 1998 WL 136560, at *1 (6th Cir. 1998) (unpublished table decision).  Moreover, this Court acknowledges that In *Crawford Fitting Company v. J.T. Gibbons, Inc*., 482 U.S. 437 (1987), the Supreme Court held that § 1920 "now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." *Id.* at 440; *see also Tinch,* F. Supp. 2d at

18

768. Section 1920 defines the term "costs" as used in Fed. R. Civ. P. 54(d).[9]  *Northbrook Excess*

*& Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991).  The statute

provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  The Sixth Circuit has explained:

> Other costs are on a different footing [than those that qualify as attorney's fees].
> These include those costs incurred by a party to be paid to a third party, not the
> attorney for the case, which cannot reasonably be considered to be attorney's fees.
> These include, among others, docket fees, investigation expenses, deposition
> expenses, witness expenses, and the costs of charts and maps. Most of these
> expenses have long been recoverable, in the court's discretion as costs, pursuant
> to 28 U.S.C. § 1920 . . . .

*Northcross v. Board of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979).

The Sixth Circuit has stated, however, that there are some costs that are included in the

rubric of attorneys' fees such as those costs that are "incidental and necessary expenses incurred

in furnishing effective and competent representation."  *Northcross v. Bd. of Educ.*, 611 F.2d 624,

639 (6th Cir. 1979)(overruled on other grounds).  The Sixth Circuit has stated that pursuant to

section 1988, a court's authority to award reasonable attorney's fees includes the "authority to

---

[9]        Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs "shall be allowed as of course to the prevailing party."  The rule's plain language creates a presumption that fees will be awarded, but "allows denial of costs at the discretion of the trial court."  *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).

award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services [such as] . . . reasonable photocopying, paralegal expenses, and travel and telephone costs." *Id.* The "cost of litigation" language in the fee provisions of CERCLA and EPCRA is identical to that in § 304 of the Clean Air Act, 42 § U.S.C. 7604(d). *See* 42 U.S.C. §§ 9659(f), 11046(f). This similarity is crucial in that the Supreme Court has held that "[g]iven the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559-60 (1986). Consequently, this Court finds that by analogy the "cost of litigation" language in the fee provisions of CERCLA and EPCRA is the same as section 1988. Therefore, this Court finds that pursuant to the fee provisions of CERCLA and EPCRA, this Court has the authority to include under the rubric of attorney's fees Plaintiff's requested costs of $63,788.23.

### 5. Interest

Finally, Plaintiff requests that this Court award it interest from December 8, 2006 on the total awarded amount. The parties agreed that this Court would dispose of all issues that the parties could not resolve themselves. In light of this agreement, this Court finds it unreasonable and inequitable to penalize Defendant by granting interest for the parties' failure to reach an agreement regarding attorney and expert witnesses' fees and costs. This Court recognizes that Plaintiff's counsel has not delayed or attempted to delay the present action. If this Court awarded interest, however, it would be setting a precedent in the future for the successful party to stall the losing party, while the losing party is trying in good faith to settle the case.

20

Moreover, the Consent Decree in the present case contained no provision for interest on Plaintiff's fees and expenses.  Therefore, this Court denies Plaintiff's request for interest from the date of December 8, 2006.  This Court, however, awards interest to Plaintiff on the amounts awarded herein from the date of the filing this order.

## C. Conclusion

For the reasons aforementioned, this Court awards Plaintiff $876,895.83 in attorneys' fees.  With respect to expert fees, this Court awards no fees to Dr. Batterman, and awards Dr. Fox's fees in full in the amount of $68,451.61.  With regard to costs, this Court awards Plaintiff $63,788.23 in costs.  Finally, this Court awards statutory interest from the date of filing this order.  The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**


        s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

21